Catharine M. Dollar v. Commissioner.
Dollar v. Commissioner
Docket No. 3202-70 SC.
United States Tax Court
T.C. Memo 1971-177; 1971 Tax Ct. Memo LEXIS 154; 30 T.C.M. (CCH) 752; T.C.M. (RIA) 71177; July 26, 1971, Filed. Catharine M. Dollar, pro se, 1940 Maiden Lane, Altadena, Calif.Allan D. Teplinsky, for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: Respondent determined a deficiency of $694.52 in petitioner's Federal income tax for the year 1967. The respondent disallowed certain deductions petitioner claimed as travel expenses and as meals for patients. As a result of these disallowances the petitioner's *155 medical expense deduction was automatically adjusted. The respondent's disallowance of the travel expense was based upon lack of substantiation. After trial, respondent conceded petitioner has substantiated her travel expenses leaving for decision whether petitioner is entitled to deduct the cost of food spent on behalf of certain homeless teenagers who lived in her home and whether petitioner is entitled to a claim for dependency exemptions with respect to all or any of them. Findings of Fact The petitioner is an individual who resided at Altadena, California when she filed her petition. Petitioner was employed by the County of Los Angeles as a child welfare placement worker during taxable year involved herein. As such she was responsible for placing children from broken homes in foster homes, supervising their care once placed in the foster home, caring for the mother, preparing court reports on the displaced child and if possible, helping the child to return to his own home. Petitioner holds a masters degree in English from UCLA. She also is qualified as a psychiatric social worker, having spent two years intership at Letterman General Hospital in San Francisco while working *156 on her masters degree in social work. Because she did not complete the program she did not receive her masters degree in this field. Since finishing her internship, petitioner has not held employment in the field of psychiatric social work. On or about April of 1966, Mr. William Johnston, 17, who had been forced out of his parents' home came to Mrs. Dollar's house because he was a friend of her daughter and because he had nowhere else to go. From April 1966 through and including the taxable year 1967 other homeless teenagers usually from broken homes who had heard about the petitioner and who also had nowhere else to go came to live with petitioner for various lengths of time. Aside from those teenagers who lived with petitioner, many more came only to eat their meals during the taxable year 1967. With regard to those teenagers that lived with petitioner, during the period of time that they were in petitioner's home, all of their costs of support, including transportation, medical, clothing, food and incidentals were provided by her. The cost of food for these individuals in the taxable year was $2,400. None of these teenagers received financial help from their parents or *157 other relatives during this time. During 1967 petitioner, a divorcee with three children ages 18, 16 and 14, owned and lived in a three bedroom house at 1940 Maiden Lane, Altadena, California. Attached to her home was a large garage containing a loft and a botanical laboratory. It was partly in this area and partly in the living room of petitioner's home that the teenagers were quartered during 1967. 754 During 1967 petitioner atempted the following means of helping these homeless disturbed teenagers, all of which were unsuccessful: (1) Petitioner first tried to have the parents take their children back into their homes. (2) Petitioner next tried to obtain contributions toward the teenagers' support, both voluntary and by force of law, from their parents. (3) Finally petitioner attempted through written pleas to have the state welfare agencies adopt a program to solve the problem. During 1967 the following teenagers lived with and were supported by petitioner during the periods set forth below: William Johnston - February - December, except May Bernard Melindus - January - September Russ Blanchard - January - December except July & August Steven Jackson - September *158 - December Stephen Robelard - April & September - December John Barrow - October & November David Gallant - April - September, intermittently Linda Estrada - January - November Eric Olson - October & December The absence of Russ Blanchard from petitioner's home for a period during July and August was temporary by reason of illness. None of the above-mentioned teenagers had gross income in excess of $600 during 1967. All had emotional problems. Along with providing these teenagers with shelter, food and clothing, petitioner would also help them with their emotional problems. No specific rehabilitation program was developed for this purpose. Petitioner instead maintained an "open door" policy; i.e., she stood ready to discuss and handle their problems when and if they came to her. Petitioner wrote but did not publish one article based on her experiences with and study of these teenagers. At no time did petitioner receive any income as a result of her work with and care for these teenagers. Petitioner did not deduct anything for the care of or feeding of homeless teenagers on her 1966 income tax return. Ultimate Findings of Fact The teenagers living with petitioner *159 did not themselves qualify as a charitable organization; nor were they placed in petitioner's home by a charitable organization. The petitioner's expenditures on behalf of these teenagers does not qualify as a deductible charitable contribution. Petitioner's primary purpose in caring for these teenagers was not profit-motivated. In caring for these teenagers, she was not in a trade or business. Opinion During the taxable year 1967 petitioner sheltered and supported in her home various homeless and disturbed teenagers, She performed these acts for humanitarian reasons. While petitioner testified that she also had a business purpose which was to publish a psychiatric study of the social forces creating the conditions which resulted in homeless teenagers such as those who came to her for help, she also admitted that the expenditures were made because her religious concepts would not permit her "to turn a youngster into the street and not feed him." Furthermore, petitioner never expected to realize a profit from her publications. Since we have found that the petitioner was not in a trade or business in caring for the youths listed above, she cannot deduct the cost of feeding them *160 as a business expense. Petitioner argues that she incurred the expense of feeding these adolescents out of religious principles so that a denial of a deduction for the amount of that expense restricted the free exercise of her religion in violation of the Constitution of the United States. This Court has held that the provisions of section 170 of the Code [1] are nonseverable. Kenneth Lingenfelder, 38 T.C. 44 (1962). Consequently, if petitioner prevailed there would be no section in the Code under which the deduction could be taken. See also Hearde v. Commissioner, 421 F. 2d 846 (C.A. 9, 1970) affirming a memorandum opinion of this Court. Petitioner also advances other arguments as to unconstitutionality of the section. Suffice it to say that we do not agree with any of her arguments based on Constitutional grounds. A charitable deduction for a contribution to a needy individual or individuals is not 755 permitted under section 170 of the Code. Subsection (c) of section 170 provides that a charitable contribution deduction is only allowed for a contribution or gift to or *161 for the use of a political subdivision, corporation, foundation, fund or religious or charitable organization or fund. Nor do the provisions of section 170(d) apply to this case. The teenagers who lived with petitioner were not full time students in the 12th or lower grades and there was no written agreement between petitioner and a charitable organization regarding them. Although petitioner did not claim any of the homeless youngsters as dependents, respondent reviewed the applicable Code section and regulations. He came to the conclusion that the petitioner could not qualify for additional dependency exemptions under section 152(a)(9) of the Code for such persons during 1967. He cites in support of that conclusion the income tax regulations. Income Tax Regulations § 1.152-1(b) and Robert Woodrow Trowbridge, 30 T.C. 879 (1958) and other cases of this Court. We agree with his conclusions as to all the teenagers except Russ Blanchard. The uncontradicted testimony of the petitioner was to the effect that Blanchard resided with petitioner from January to December 1967 except for a period during July and August "when he was really out of his head and was in the streets. *162 " Section 1.152-1(b) of the Income Tax Regulations provides: "* * * The taxpayer and dependent will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness * * * shall be considered a temporary absence due to special circumstances. * * *." We have found that the absence of Russ Blanchard from petitioner's home for a period during July and August was temporary by reason of illness. Therefore, the petitioner is entitled to an additional dependency exemption for him under the provisions of section 152(a)(9) of the Code. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩